We'll hear argument next in Case 1743, Dada v. United States. Mr. Shammagam. Thank you, Mr. Chief Justice, and may it please the Court. The Federal wiretap statute, Title III, was enacted 50 years ago in response to national concern over wiretapping and the threat it posed to individual privacy. Title III prohibits wiretapping unless a series of detailed requirements is met. And to ensure compliance with those requirements, Title III directs the suppression of the evidence derived from a wiretap order when there is an error in obtaining, issuing, or executing that order. As is relevant here, Title III directs suppression if a judge issues an order that is insufficient on its face, that is, if the order itself fails to comply with any of Title III's requirements. Ginsburg. Mr. Shammagam, the expression insufficient to authorize, this order was sufficient to authorize all of the interceptions that were introduced in evidence. The problem was that it authorized more, but that more was never introduced. So I don't understand how you can characterize the order here as insufficient. It was sufficient, but then it went beyond. And that beyond was not operative in this case. Justice Ginsburg, let me go directly to that threshold argument which the government makes for the first time before this Court. To the best of our knowledge, the government doesn't. Ginsburg. You said that, but it seems to me that was exactly what the magistrate judge and the district judge went on. The magistrate judge and the district court seemed to conclude that by virtue of the fact that all of the interceptions that were introduced were interceptions that took place within the Court's territorial jurisdiction, that there was no problem and that, therefore, suppression was not required. I don't think that they really grappled with this argument that the government now makes about the meaning of the term insufficient. But let me address the merits of that argument directly, Justice Ginsburg. The government seems to make the argument now that these orders were not insufficient on their face because they were merely overbroad. But I don't think that that's the better reading of the phrase insufficient on its face, either as a matter of plain text or as a matter of the policies that were animating the inclusion of this particular provision. Let me state first what we think insufficient means. We think that an order is insufficient on its face if the failure to comply with the requirements of Title III is evident from the four corners of the order itself. And the government now concedes that under such a standard, the orders here would be invalid because each of the orders here contained jurisdictional provisions that went too far, that went beyond the power of the district court to offer. Kennedy, if the statute merely prohibited the introduction of evidence from unlawful interceptions, I might be inclined to agree with you. But, of course, we know that the suppression provision here does more. It not merely prohibits and requires suppression where there is an unlawful interception. It goes further and refers to some category of cases where the order is insufficient on its face. Now, the government attempts to make this plain language distinction between orders that are overbroad and orders that are somehow otherwise insufficient. But I think if you look at the very dictionary definitions that the government now relies on for the word insufficient, you'll see that those definitions essentially define the terms insufficient and inadequate and invalid effectively, synonymously. Roberts Well, I understand inadequate being the same as insufficient, but I don't understand invalid. I mean, if you have a requirement, you know, you must have these four things in your order, and you fill them out and you've got all four, and then you've got another one that's not required. It seems to me that that might be invalid, but you can't say it's insufficient. You've got everything you have to have. And yet you're saying if you add something else, it's insufficient. It seems to me it might be invalid under the statute, as you say. You can't do what the fifth thing says. But I don't see why it would be insufficient. Shanmugam Mr. Chief Justice, I suppose that one could try to draw fine distinctions between all of these terms. I think each of the three dictionaries on which the government relies defines the term invalid to mean inadequate, and they define inadequate to mean insufficient. But I think even if you think the government relies on the term invalid to mean inadequate, you can't define insufficient to mean invalid. Shanmugam But I'm happy to fight this case on the ground that we're talking about insufficiency or, as you put it, inadequacy. We believe that these orders Roberts Well, what about invalidity? Forget I said inadequacy. You have to say that insufficient, you have to say that invalid is the same as insufficient. Shanmugam I don't think that that's necessarily true, Mr. Chief Justice. I think you could say that these orders were insufficient precisely because they lacked a valid limitation. In other words, the Roberts Could the orders have been used for anything? Shanmugam No. If an order is Roberts Well, then it's invalid. Shanmugam Well, correct. I mean, in other words, we certainly take the view that those terms are, in fact, synonymous here, and indeed, that's the view that the government took below when it referred to the potential facial invalidity of these orders. But I think my point Roberts The order didn't need any statement with regard to the territorial limitation, did it? Shanmugam We believe that Roberts If that were not in this order, the order would still be sufficient, right? Shanmugam We believe that the orders would still be insufficient if they did not contain that. In other words, we believe that the better reading of the statute is that it requires the jurisdictional limitation to appear on the face of the order. But, of course, here the order is Roberts Do you have any authority for that? Shanmugam I would rely on the language of the statute itself. Roberts Do you have any judicial authority interpreting the statute? Shanmugam So I'm not aware of any case that presents the question of what would happen if a jurisdictional limitation were entirely omitted. And my understanding is that the trip Kagan Where do you see it in the statute as requiring that? Shanmugam So I would point to 2518.3 itself. And while it is certainly true that 2518.3 is not worded in terms of what an order shall specify, I think in some sense it goes even further. This is the one requirement that Congress thought was so foundational that it included it in the very provision that authorizes a judge to enter a wiretap order in the first place. The Court will be aware of that language. It's at pages 16a to 17a of the government's brief. And it says that the judge may enter an order authorizing interception of communications within the territorial jurisdiction of the court in which the judge is sitting. Ginsburg So if the application just says telephone X pursuant to whatever it is, whatever it is, just cites the statutory section, but doesn't say district of Kansas. Shanmugam I think that that would still be insufficient. But, Mr. Chief Justice, to get back to your question that started this discussion, I don't think that the Court needs to answer that question, where is here. You have a provision that goes further. It affirmatively Breyer Wait. Wait just a second, because I might be missing this. I don't see anywhere in this order, which is in your joint appendix, volume 2, you must be telephone number 1 or telephone number 2? Shanmugam Yes. I mean, we're talking about Breyer Or were you telephone number 1 or number 2, one of those two? Shanmugam You know, there were multiple communications pursuant to  I know that, but I mean, for purposes of this order. Shanmugam Yes. Breyer Okay. Now, where does it say in this order in respect to telephone number 1 or telephone number 2 that they can intercept within the jurisdiction of the issuing magistrate? Shanmugam So the orders, and let me take you to page 97 of the joint appendix. Breyer That's what I'm on, and it says it doesn't say anything about, it talks about outside the territorial jurisdiction in the relevant full paragraph on page 97. I don't see here anywhere, I mean, if what you said was true, why didn't you challenge us on the ground that it's insufficient, because it does not claim or put in words that, in respect to telephone number 1 and telephone number 2, you have authority to intercept within the jurisdiction of the issuing magistrate, which I think was New York, wasn't it, or was it? Shanmugam So the judge who entered this was a judge in Kansas, right? And I think that this line  Where does it say they have jurisdiction to intercept in Kansas? Shanmugam Well, I think it's that is implicit in the paragraph Breyer No. Shanmugam on page 97. Breyer Oh, read the paragraph. It says in the event that they are transported outside the territorial jurisdiction of the court, interception may take place in any other jurisdiction within the United States. It nowhere says that you have authority to interpret, to intercept in Kansas. Shanmugam Well, you know, I think Breyer I take from your hesitation, it does not. Shanmugam No, well, I think that it is, at a minimum, implicit in that, that if the telephone is in the territorial jurisdiction, that interception may take place in the territorial jurisdiction. Breyer But aside from those words, yes. Shanmugam But I think our argument would be the same, Justice Breyer. In other words, our argument here is that this provision goes too far. The judge is exceeding his power when he enters an order that authorizes effectively nationwide jurisdiction over the tapping of these phones. Breyer The reason that I can't ask my question, because you've stopped me cold, that is, what I thought was that we'd have an order which says you can tap in Kansas and you can also tap outside of Kansas. And I find the paragraph which says you can tap outside of Kansas, okay? But I can't find the paragraph which says you can tap in Kansas. So the first thing you say is, well, it's insufficient if an order does not say you can tap in Kansas. That's what you say. You just said that. And so I never thought of that. And but lo and behold, I never thought of it, although I read the briefs in this case and I read the opinion below, and they never said anything about it. So I started where the – where I think I can't remember who asked the question. I started saying it doesn't have to say that because that's not listed in Title IV. That's in Title III. Right? So you see my puzzlement? I do see your point, Justice Breyer. So let me explain how, you know, again, we think that all of this should work. And I think that our position is, you know, a simple one that I think courts have consistently accepted, at least up until now, when the government is suddenly making this argument. That is, first of all, that insufficient here really does comport – it does imply a failure to comply with any of Title III's requirements. And here the government concedes that this provision does not comply with those requirements because it goes further than even the language in the statute authorizing this. Breyer. Well, suppose I said this. There is one paragraph here saying, which I just read you, which says you can tap outside of Kansas. Your clients had nothing to do with that.  Okay? So what we do is we excise that paragraph. It's called severability. Excise it and send the case back to see, with that paragraph excised, whether there is some other reason why this warrant might not be good. What about that? I mean, you could do that, Justice Breyer. In other words, I think that the failure expressly to authorize interception within the jurisdiction would, at most, be an additional reason why this is defective. Again, our view, as I indicated in response to Justice Kagan, is that when you take a look at Section 2518.3, it indicates that this is an additional requirement, indeed, as I said earlier, really sort of the foundational requirement. Is your view dependent on our accepting that, that it's not only a foundational requirement, but that it's a foundational requirement that has to be on the face of the order? No, because of the over-breath of the orders. In other words, as I indicated to Justice Breyer, I certainly think that to the extent that the failure specifically to refer to Kansas matters, it would only help our argument. But at bottom, our argument is that because the order exceeds the Court's territorial jurisdiction, it's facially inadequate and therefore insufficient. Now, the government has a right to do what they want to do. Kagan, irrespective of whether the jurisdiction has to be stated on the face of the order. Yes, that is correct. In other words, our view is that because there is a conceded failure to comply with one of Title III's requirements, that's all that's needed. And I think that the government's argument would really lead to strange and anomalous results here. In our reply brief, we give the example of an order that authorized interception for 180 days rather than 30 days. I think the government would take the same position, that that order would not be facially insufficient because it would merely be overbroad, in Justice Ginsburg's words. Alito, in other words, if subsection 1 were to apply in that context, there would still be the additional inquiry about the core concerns of the statute that this Court mandated in Chavez and Giordano. But I think that that example really points out. Sotomayor, you thought the circuit split that we had granted on was whether the core concern analysis applied to subdivisions II and III-III. Isn't that the circuit split granted? That is the question on which this Court granted cert. And again, I don't mean to. Well, it wasn't the question presented, but that seemed to be the focus of the entire briefing in this case, with the exception of the government's new argument that this wasn't insufficient. But putting that aside, I thought that we granted cert on that. That is the question on which the circuits are divided. And I don't mean to fight too hard the Court's addressing this threshold argument that the government is now making. The government did make it, albeit in passing, in its brief in opposition. I think that the Court really did grant cert on the premise that these orders were insufficient. But I think that it's no surprise that before this Court, on the actual question on which this Court granted review, the government has comparatively little to say. But, you know, if we don't have sufficient, why should we, if we think that the phrase insufficient doesn't mean overbreadth, why should we proceed to base a decision on a premise that we think is wrong? And your point about why was the district court wrong when it said simply the government did not actually intercept communications outside this Court's jurisdiction. Therefore, as applied, the orders did not violate the statute. That seems to make good sense. I think that that is a regime that Congress could have enacted, but I don't think, Justice Ginsburg, that that is the regime that Congress did enact. In other words, Congress did not enact a regime in which the sole focus was whether or not a particular application was unlawful. If that had been what Congress had intended, it would have stopped after subparagraph  But it's not the case. Alitoson I mean, I tried to figure out where this insufficient-on-its-face language came from, because it is somewhat curious, and I'm sure that you have probably researched this more thoroughly, but the best I could come up with was that it was taken from old Rule 41e of the Federal Rules of Criminal Procedure. So if that's the case, should we look to the way that rule was applied? So I don't think that we know that that is where the phrase came from. It does not appear anywhere else in the United States Code, to which, as far as I'm aware. But I think, quite frankly, I would not go – I would not think that the Court would need to go any further than looking to, again, the plain meaning of the term insufficient, but also the policies animating the inclusion of this provision. And I do think it would lead to highly anomalous results, to limit insufficiency and to exclude cases in which language is overbroad, but yet concededly violative of the statute. Alitoson I mean, if you – do you think that if this situation had been presented to the Congress that enacted the 1968 legislation, which was basically anti-crime legislation, that they would have said, yes, in this case, Mr. Dada can't be convicted, even though what happened here had no effect whatsoever on him? I do think so, and I think so precisely because of what Congress or the Senate, to be more precise, said in the Senate report, where the Senate made quite clear, and this is at page 96 of the report, that it intended to compel compliance, strict compliance, with the requirements of the statute. And again, as I indicated at the outset, Title III was enacted against the backdrop of a vigorous national debate over whether wiretapping should even be permitted in the first place. And I think as part of the compromise that was struck when Congress enacted Title III, it included a very muscular suppression provision. Now, I think what the government tries to do throughout its brief, and I suspect you'll hear this from my friend Mr. Tripp today, is to try to get this Court to think about this case in traditional Fourth Amendment terms, where the Court is always taking into account broader principles of prejudice and causation and the like. And I think that where this is clearest is in the government's argument that the Court should somehow sever the invalid applications of the orders from the valid. Ginsburg No invalid application. The only intercepts that were introduced were in the – from the District of Kansas. So did the order authorize an invalid application, but there was no such invalid application? Well, in fact, there were. There were communications that were intercepted from a wire room in St. Louis in response to the motion to suppress. The government, I think quite wisely, indicated that it was not going to introduce those communications. But I think more broadly, I would say two things about that, Justice Ginsburg. First, I would say that when you have a facially insufficient order, any communications that are intercepted pursuant to that order are unlawfully intercepted. I think that that was the premise of this Court's decisions in Chavez and Giordano. And second, that to the extent that the government is making this back-end argument about a severance principle and seeking to introduce a severance principle that the lower courts have recognized in the exclusionary rule of context in the Title III, that there's just simply no textual footing for that. The statute is just as simple as that. Ginsburg But you didn't recognize that if that paragraph were deleted, this order wouldn't be sufficient. Potentially, leaving aside our argument that you would have to affirmatively state a jurisdictional limitation. But I think more broadly, if you agree with us on the issue of facial insufficiency, the government's fallback argument, leaving aside its relatively cursory argument on the actual question presented, is that you should apply a severance principle. And not only does that principle have no footing in the actual text of Title III's suppression provision, I think that that would really sort of effectively all but read subparagraph 2 out of that statute. What the government is attempting to do through these various arguments is to create a regime under which only when there is unlawful interception and the fruits of that unlawful interception are introduced can there be suppression. Again, if that were true, why did Congress go on to say in subparagraph 2, essentially, that even if communications were lawfully intercepted, there should be suppression when an order is insufficient on its face? And again, the severance principle on which the government relies, and the government cites various lower court decisions for that proposition, is a principle that was not well established in the law in 1968. No Federal court of appeals, as far as I'm aware, had even recognized that principle. And, of course, that principle is animated by concerns about the harsh effects of the judicially-created exclusionary rule. Breyer, but here's the problem. First, if I look at this, what you just pointed to says you have to have in this document the nature and location of where the authority to intercept is granted, doesn't it? Yes, you just pointed to that. So I look at the last page and it says, District of Kansas. It says it. The judge puts his title, District of Kansas. There is the authority. That's what they want. Exactly what you said. That's where the authority comes from. And Title III makes clear they can't go beyond that authority, except in some circumstances that are not present here. So what we have with the paragraph you're pointing to is an addition. It says, in addition, you can go outside of Kansas. That is wrong. And, by the way, they didn't go outside of Kansas, insofar as your client is concerned and anything that was introduced into evidence is concerned. So everybody's instinct, or at least mine, to say, well, sever that. Maybe the judge wrote poetry on the wrong paper, you know. I mean, maybe he wrote down a joke. Maybe he wrote something that was totally extraneous, that had nothing to do with the case. We wouldn't look at that. We'd just say, forget it. It has nothing to do with this case, and why shouldn't we do the same thing with this paragraph? I understand that instinct, Justice Breyer, because that would be a natural Fourth Amendment instinct. In other words, lower courts, to have looked at the issue, have pretty universally now concluded that when you're in the traditional exclusionary rule context, and when, say, you have an order that authorizes, a warrant that authorizes the search of two apartments and there's probable cause as to one and not as to the other, you sever. I think that the only problem with that, and in our view it's a dispositive problem, is the actual language of the statute. The statute draws a direct line between an invalid, insufficient order and the suppression of any communications obtained pursuant to that order. Sotomayor, you keep mixing, as you just did, insufficient and invalid, and I want  to ask you, if somebody told you to bring to a party apples, bananas, and pears, and you brought apples, bananas, pears, and cherries, the person would not say, that's insufficient, right? I think that a person might say that that's insufficient. In other words, I think that I don't think you would, I don't think in that context, you know, you would ordinarily talk about insufficiency. And I'm willing to also recognize, Mr. Chief Justice, that there are circumstances in which insufficiency necessarily means that something is lacking. I mean, I think that when we think about, say, evidentiary insufficiency, that ordinarily, you know, you can't have too much evidence, you can only have too little. I think that this is a somewhat unusual formulation. And again, it's a formulation, as I indicated to Justice Alito, doesn't appear anywhere else in the United States Code. And I do think that the definition of the term insufficient, even if you view insufficient to mean lacking, could easily mean lacking a valid limitation. It doesn't necessarily mean lacking a provision that the order is required by statute to contain. I see that my yellow light is on, so I'll just say one thing about the actual question presented here and the government's argument. I think that if this Court were to read a core concerns requirement or a fundamental defect requirement into subparagraph 2, it would essentially be creating the very problem that this Court addressed when it adopted that requirement in Chavez and Giordano. And I think it's really no accident that for that reason, the government devotes most of its brief to these arguments that it had not previously made and that really don't go to that question.  Thank you. Roberts. Thank you, counsel. Mr. Tripp. Mr. Chief Justice, and may it please the Court, I think as most of the question has already picked up, the best way to encapsulate our basic position in this case is just to imagine what would have happened if everything was exactly the same, except this language was missing from the orders. It didn't add this additional authority telling us that we could put the wire room outside Kansas. If that had happened, there would clearly be no basis for suppressing any of the evidence we relied on here. It was all lawfully intercepted inside Kansas. The orders say everything Title III requires them to say to allow us to intercept. Sotomayor, let's go back to that point. Justice Breyer is correct. I don't find in this order saying you can intercept in Kansas. It doesn't say it directly. All right. So how is that sufficient? Is it your position that every order does not have to say it's limited to Kansas? Forgetting that it says you can intercept. It's not the limit. So Title III says in no uncertain terms what every Title III order, quote, shall specify. It's in 2518 sub 4. It's on 17A of the 25. Yes, and I was reading that. And the location of the place where we're going to put our wire room is not one of those items. Instead, the venue provision that we've been talking about here appears on the previous page in 16A, and it says, right, that the, obviously, the interception. It's actually in subdivision 3. Right, on 16A of our gray brief, yeah. It says, may enter an ex parte order as requested or as modified, et cetera. Within the territorial jurisdiction of the court in which the judge is sitting. You take that within to mean that the judge has to be within that jurisdiction? So, wait, sorry. Or that the order has to be within that jurisdiction. So we now agree. There was dispute in the lower courts about whether a tapped mobile phone qualified as a mobile interception device within the next clause of that, saying that we could put our wire room anywhere in the country. We now agree with Petitioners. The answer is no. We can't. The wire room needs to be in the same judicial district. Sotomayor, I'm sorry. Do you agree that the order has to be within the four interceptions within the jurisdiction, except for a mobile device, and you agree this is not the case? Yeah. So an order from the District of Kansas, we need to put our wire room in the District of Kansas. Are you taking the position that the order does not have to say at all that it's within the jurisdiction? Yeah. That is absolutely our position. That's your position. Yeah, absolutely. I think that follows just straight from the text of the statute. It is enough that this is a law. And so you're saying only a violation of those four, of subparagraph 4, even though the whole process of ordering is premised on it being an order within the jurisdiction of the court? Well, I don't think so. This is obviously an order from the Kansas court. I don't think there's any dispute about that. And then the question was just where do we put our wire room. I think I was trying to say. It's such a strange position, though, that you would have an order that wouldn't tell you where you could do this. I think it just follows. It's a background rule that follows from the statute. When you get an order that says that it's coming from the District of Kansas, then the rule is you can either intercept inside the District of Kansas or outside the District of Kansas if you're using a mobile interception device. That's the rule in every single Title III case. Sotomayor's requirement of every warrant that you have to give a time, place. We know the rule requires a time, a place. But there's no place here. Right. So if you look at the checklist of items that the statute expressly requires every order to contain, it does all of those things. It tells you you need to add. How about if the judge fails to make the required findings under 3? Would the order be insufficient if he didn't do what subparagraph 3 requires? I think, actually, that is a classic example of something that would fall within prong 1. It's hard to think of a situation where you have an order where on its face it's clear from the order that the judge didn't make any of those requisite findings really for two reasons. One is, again, those findings don't actually need to appear in the order. Title III doesn't require that. And then the other is, you know, in practice, they actually quite often recite a probable cause finding. Sotomayor So that's your position. Your position is if the jurisdiction is missing, it falls under prong 1? If jurisdiction is missing. Sotomayor Aye. I should say not 1. Sorry. So if jurisdiction is missing and we sought to introduce evidence that was intercepted from outside the jurisdiction, right, if we had been no language in this case, in these orders. Sotomayor This is a more interesting argument. Because I can't figure out how you could have an order that doesn't have jurisdiction. It seems to me that that's a requirement of every warrant. So it's not correctable somewhere. It makes no sense to me. It does not need to say where the wire room needs to be located. Indeed, I'll say that the applications in this case didn't even say where we were going to put the wire room. That that went to how we were going to implement the order of the Kansas court. The jurisdiction that flowed from those orders flowed from the fact that it was an order of the District of Kansas. It said District of Kansas across the top. And so the upshot of that is that we either needed to put the wire room inside Kansas or we could put it outside if we were using a mobile interception device, which we weren't doing here. Kagan But, Mr. Tripp, if the order doesn't have to include anything about territorial jurisdiction, how is anybody to know whether it approves interception only within the territorial jurisdiction or instead outside that jurisdiction? I mean, there's a choice here, depending on whether there's a mobile interception device, right? If there's a mobile interception device, you can approve interception more widely than if there's not a mobile interception device. So I would think, looking at this statute, and I recognize that it's not included in one of the things that's said in number 4, but that number 3, you know, just implicitly requires a court to say which one it is. Is it just within the jurisdiction or is it outside the jurisdiction because there's a mobile interception device at issue? Tripp So I think our first response is the statute doesn't require it to appear in the order because the statute doesn't say that. And then I think the second is that the background of the case is that there is a mobile  Kagan But I guess what I'm saying is I appreciate that, but how is anybody to know unless the court says that? I mean, they're not going to know what they can do unless the court says what they can do. Tripp Right. So I think it's clear to everybody that in all these cases that we can put the wire room inside Kansas, right, that flows from this just sort of background jurisdictional principle. And the harder question in all of these cases is, or that prompted this line of cases, was, well, what about the, what is a mobile interception device? When can you put it outside? And in this case, we got advanced judicial approval from the district court of the government's view at the time that when you were tapping a cell phone, that qualified as a mobile interception device, we could put the wire room outside Kansas. Ginsburg You were wrong about that. Tripp You were wrong. Ginsburg Am I right that that's an obsolete thing? The mobile interception device you thought was the mobile phone, but it's really the bug. Tripp It's really the bug, that's right. Ginsburg And now they don't use bugs anymore, do they? Tripp Not never. But, you know, you might install a bug inside a car or something to track all of the communications in the car, not just the communications over a phone. It's just a different kind of case, and none of that. Kagan Let me say this another way, Mr. Tripp. On 17a, it says each order authorizing or approving the interception shall specify. And you're right. The jurisdictional thing does not appear in this list. But then if you look at 16a, what is an order authorizing or approving the interception? On 16a in paragraph 3, it says, well, the judge enters an order authorizing or approving interception either within the territorial jurisdiction or outside that jurisdiction, depending on whether there's this mobile interception device. So it just does seem to me that that's just got to be a necessary part of an order authorizing the interception. Where is the interception supposed to take place? Either within the jurisdiction or outside, depending on whether there's a mobile interception device. It's just got to be in the order, because otherwise how would you know which of those two possible things is true? Tripp So two follow-ups on that. It doesn't say either or. It's and, right? And so we can do it inside the territorial jurisdiction and outside if we're using a mobile interception device. Kagan Well, no, but it isn't either or, because if there's a mobile interception device, it's both. And if it's not a mobile interception device, it's only one. Tripp Right. And I think that's a disjunctive thing. It's only one or it's both. Tripp Yes, but that is something that goes to how the government is going to implement the order, how we're going to go about intercepting the communications. It is not a determination that the judge needs to make up front when issuing the order. Actually, I think another thing that drives that home is in 3, 3 goes on and lists a number of things that have to come after this jurisdictional provision that the judge must determine on the basis of facts submitted by the applicant. And jurisdiction is not one of those things, because the application doesn't need to say whether we're using a mobile interception device. That's not part of the process. Ginsburg How do you answer Mr. Shanmugam's positing? Suppose this order had authorized the interception to continue for 180 days when the statute says only 30 days? Tripp Yes. So we actually offered a pretty similar hypothetical to this in our brief at page 37, because I think it's a good illustration of the practical difference between our position and Petitioner's. So both sides are in full agreement that from days 31 forward, we can't use the evidence. It would need to be suppressed. The principal difference between our positions is that what we're saying is that from days 1 to 30, when the order has validly authorized us to intercept those communications in full conformity with Title III, we have that authority. Whereas what Petitioner's are saying is that as soon as it goes across the line at 31 days instead of 30, their position is that you need to throw all of the evidence out, no matter what, even if the government noticed the problem and never did any interception after day 30. So it's really a very extreme position. We offer a couple of other examples. Breyer I'm a little bit still worried about what we discovered at the outset, that at least they are claiming that this order has to say you have authority to wiretap in Kansas as well as outside. So it occurs to me that there are two things which worry me. The first, by the way, it does say in Kansas, where it says Kansas is under the signature of the district judge. So it may be that they're thinking, given three, you know, given what you read us on page 16a, where it says a judge can, within his territorial jurisdiction, authorize a wiretap, that that's good enough. It says he's in Kansas. It says in the statute that you can authorize it within the State you're in, and therefore we know this authorizes Kansas. They're going to say, if they – if this were what the argument were about, that isn't good enough. It should say, and you can do it. Now, what I'm worried about is that there are thousands, that this is a – this is a form, and that there are thousands of wiretap orders, perhaps, throughout the country which do not say in District X, though it says I am a judge in District X, they do not say that you have authority to tap in District X in those words. I'm worried about that, because I wouldn't like this case suddenly to cast doubt without argument, you know, full argument on those thousands, if there are those thousands. Do you know? I would say I'm quite worried about that as well. I guess I don't have extensive empirical evidence of how often we were issuing orders that didn't include that precise language, in part because it has been the focus of the case. I do know that language like this was quite common at the relevant time in 2012 when the only judicial precedent interpreting the phrase mobile interception device had held that it included the tapped cell phone. And so it was quite common for orders to include this language saying, yes, you can also put your wire room outside Kansas. Breyer. I got that. I see that. There's one other question I have, which is, since that wasn't fully argued, what do you say in response to their argument that these questions of severability and reading, et cetera, while very interesting, were not the subject of any argument below? Well, so on that, I think I'd like to echo what Justice Ginsburg pointed out earlier, which is that we won on the basis of severability in the district court. I think the clearest indication of that is the magistrate judge's opinion at page 73a of the PEDAP, where the magistrate judge described it as, quote, academic, whether there was a problem with that additional language in the orders. And then in the PEDAP at 64a, the district court said, as applied, the orders did not violate the statute, and we've. Sotomayor, Mr. Cox, just so I understand your argument, your argument really is that the court's approach was right, that the core concern analysis applies to III and III, that what we announced in Giordano and that was it, Chavez, that that inquiry applies to those two subdivisions. So let's assume, for the sake of argument, because I understand you're saying the order is subpagraph IV, that if it misses any one of these four things, we apply the core concerns. No, I don't think that's an accurate description of our position. So what is your point? So I think it would help if I could clarify what exactly we mean by insufficient and overbroad. No, I don't want to know those terms. I want what the circuit split is. The D.C. Circuit has said, taken a position contrary to yours in this case, but the D.C. Circuit has said that the core concerns analysis that we used for subdivision I doesn't apply to II and III. Do you disagree with that? So the way I'd like to put it is, so our front line is. No, just answer my question. We think that the court of appeals, to the extent the Chavez and Giordano test is relevant, we think the court of appeals put it in the wrong box. There is no dispute that once you have an order that is insufficient and you're trying to decide whether to suppress tainted evidence on the grounds that the order is insufficient on its face, that Chavez and Giordano do not come into play at that point. Our point is that this is not insufficient. Right. Our primary arguments here are that this order was not insufficient, and in any event, even if you think it was, the error is severable. Mr. Troops, I'm sorry. Finish your sentence. So I just want to be clear about. Go ahead. When you say insufficient, I mean, you know, the Chief Justice raises a very good point that insufficient doesn't usually mean invalid, that it usually means lacking something. So then the question is, well, was this order lacking something? And you say, no, it wasn't, because it didn't have to have anything about the jurisdictional reach of the interception. And I guess I'm a little bit concerned listening to you. I mean, if we accepted that, how are these orders supposed to read? We're going to go tell every court, you don't have to put anything in your order about whether this is only within the jurisdiction or outside that jurisdiction? Because, again, there are really two choices in the statute, depending upon whether a mobile interception device is an issue. And if we said, well, this is not insufficient because you don't have to have that, what are we going to be creating, a world of orders in which the judge doesn't tell anybody whether this is within the jurisdiction or whether it's also outside the jurisdiction? No, I don't think that's the upshot of our position. I think one thing to just point out is, as a practical matter, these orders contain a large amount of material that Title III does not actually require them to contain in order for interception of the communications to lawfully occur under Title III. Like, the orders in this case, for example, include these recitations of probable cause and necessity and other information that is not strictly required. And the government often asks to have that in these orders because, you know, in practice they are heavily picked over. We like to be sure that the district court knows in advance what it is that we're actually doing. I think, actually, maybe this is a case where it backfired, where we were, you know, trying to cover our bases, be sure that the district court understood what we might do in this case. It so happened that we didn't rely on any of the evidence in this trial that was intercepted from outside Kansas. So I think I don't think that's the way it would head. Alito, if you were seeking to use a mobile, a real mobile interception device, would that appear in the application? I think if we were going to actually seek for approval to put a bug in somebody's car, like a mobile interception device, in that way, I think it would be clear from the application that that's what we were talking about doing. But the orders, you know, in the applications and the orders, we didn't explain to the court that we were going to be tapping from a wire room on the basis of a wire cooperation obtained under a different federal statute. I mean, when this statute was enacted in 1968, there were no cell phones. So I would think that, I'm not sure what, under what circumstances the order would need to specify where the tap was going to be, would have to say that you're authorized to tap a particular number, which would be registered at a particular place. So it would be taken care of. Otherwise, would you need to have a, would there be circumstances at that time where you needed a separate provision of the order specifying where? No. I think, you know, the manner in which interception has very much changed in the last 50 years with the change in technology, it is, of course, I think it's undisputed in this case that the interception of a cell phone occurs wherever we put the wire room. And again, I would like to emphasize that not only did we only use evidence in this case that was intercepted from inside Kansas, we only used evidence in this case under orders where the interception was exclusively inside Kansas. Roberts. Roberts. One thing that the statute requires is that the order identify the person authorizing the wire tap. Now, let's say you put your name down, Zachary Tripp, assistant to the Solicitor General. You have satisfied the statute. You have identified the person authorizing the wire tap. But you're not allowed to do that. Now, is that, that's invalid. Would you say it's also insufficient? Maybe you could read the statute that way. We don't take it that far. We think that when the statute. So you think something that literally complies with the statute can be insufficient because it's invalid? It's more that I think when the statute says that you need to identify, so each order needs to identify the identity of the person who approved the application. And then when the Title III tells you that that has to be a person of, you know, that that incorporates that into the requirement. And so if it were to identify somebody like me or the, an executive assistant, somebody who clearly didn't have the authority, then no, it would be insufficient as to that. Then it would be lacking, lacking something. It would be lacking something that Title III expressly makes necessary. It says the, you should identify the person authorizing it. You do that. You put your name down there. It's not lacking anything. It's just not authorized. I mean, it's not permitted under the statute. I think, so our definition of what insufficient on its face means is that if it is lacking something that is necessary for the government to actually just rely on the orders to intercept the communications at issue, I think in that case it would be quite clear that the order would be lacking something that is necessary for the government to intercept those communications. The order would tell you on its face that it was approved by an official who lacked the ability to do that. That's actually in response to my brother. That's one of the examples of where we think the suppression under Prong 2 can reach some situations where Prong 1 would not apply, like if in fact an appropriate official had approved it notwithstanding what it said on the face of the order. Ginsburg. Mr. Tripp, I'd like to ask you about the Lover case, the D.C. Circuit case, which is set up as creating a split with this decision. Am I wrong in my understanding of Lover that the district court in the District of Columbia authorized something that she had no authority to order because she ordered a bug to be attached to a trough in another jurisdiction? So it wasn't a question of over-breath. It was a question that she didn't have authority to order that a bug be placed in a trough in another jurisdiction. Right. In Glover, that was a case that involved the use of evidence that was, you know, actually squarely obtained pursuant to the order saying that they could do that. And so, yeah, I think there really the circuit conflict, I'm not sure there really was a circuit conflict. Obviously, we opposed certiorari here. And I think the sort of the trickier questions in this area about, well, what do you do when the government is actually relying on evidence that was obtained outside the jurisdiction, and in particular based on the misreading of the phrase mobile interception device, just none of that is presented here. And I think there are two just much easier threshold ways of resolving this case. I think, frankly, the easiest is on the grounds of severability, the straightforward way we won this case below. I think the other is just to say that the orders were not insufficient because they did include everything that Title III required them to contain in order for the form interception inside Kansas, and that's the only evidence we relied on at trial. I think just one other – I just want to clarify one other thing I said earlier. Kagan I mean, if we're talking about easy ways to resolve this case, I have to say the more I think about this, the more it seems really complicated to me what's supposed to be in these orders and what's not supposed to be in these orders. The only thing I'm sure of in this case is that there's no core concern requirement. So why isn't that the easy way to decide this case and leave everything else for cases where actually people have briefed and addressed these questions of what has to be in and what has to be out and when you can call something insufficient and when not? So, of course, we agree that the Court could send the case back to the court of appeals on that basis, although just a couple caveats. We agree basically as a fallback argument on insufficiency that the Chavez and Giordano test is appropriately considered as to whether the order is insufficient in the first place. I wouldn't want to leave that out. I think another couple of points on this is we've been making these arguments about that the order is not actually insufficient on its face and that it just doesn't matter here because we didn't use any evidence that was intercepted outside Kansas. We've been making these arguments all along. We want it on this basis in the district court. We preserve these arguments in the court of appeals. It flew by them and but I don't think that the right result is to treat it as if we haven't made these arguments. I think the appropriate course is simply to affirm. Kennedy, on that one point, might it have been true that you did use some of the California intercepts that originated from Missouri as part of your general investigation and maybe that hasn't been raised in this case. It would be maybe fruit of the poison tree argument or something like that. Yeah. This is something I wanted to clarify. So we did not use any evidence that was the fruit of the poisonous tree. We did not use any evidence obtained under any order where we did any interception outside Kansas. There were ten orders entered in this case. For nine of them, including all the orders covering Petitioner's phones and all the orders we relied on at trial, interception was all in Kansas. For the one remaining order, we did the interception at the DEA headquarters in St. Louis where there was better Spanish language capability, but we didn't use any evidence under that order at this trial here. I think also one point I really do want to emphasize here is that I think our primary interest in this case is in being sure that the Court did not adopt Petitioner's very extreme rule where as long as there is any statutory violation of any kind apparent on the face of an order, then you automatically and mechanically need to suppress all of the evidence obtained under that order no matter what, even when there is no causal link between the error and the interception of the evidence. That would be very damaging. I think this case is a good example of why that, frankly, doesn't make all that much sense. I have a lot of trouble imagining, excuse me, that any Congress would knowingly enact that rule. I admit that the statute is ambiguous. You could potentially read it Petitioner's way, but I think with all due respect to Petitioner's, it is also ambiguous. And you could read it our way, that insufficiency only means some errors, not all of them. Only some things make an order insufficient. This error just made it overbroad, not insufficient. And regardless, even if you disagree with that, that you can sever the mistake the orders here were not insufficient to authorize the interception of these communications inside Kansas. And that's the only evidence we relied on in this trial. So if there's no further questions, asking the Court to affirm. Roberts. Thank you, counsel. Four minutes. Mr. Shanmugam. Thank you, Mr. Chief Justice. The district court in this case exceeded its power under Title III by authorizing what was effectively a nationwide wiretap for the phones at issue. And in doing so, the district court entered orders that under the statute it simply lacked the power to order. The orders at issue here were ultra viras. Now, the government concedes that the orders did not comply with the jurisdictional requirement, and instead, it argues that the communications at issue could have been lawfully intercepted if the district court had only entered narrower orders. But if, in fact, that is sufficient to avoid suppression, it's really difficult to see what purpose subparagraph 2 serves in this statute at all. Subparagraph 2, by its terms, must apply in circumstances in which the communications at issue were, in fact, lawfully intercepted. And I would note parenthetically, in response to this back and forth both with me and with Mr. Tripp on the issue of what would happen if the orders were completely silent, that it's hard to see how these orders could be silent on something as fundamental as the question of where interception may occur. And if anything, in 1968, well before the advent of modern mobile telephone technology, you might think that Congress, if anything, would have been more concerned about the risk of forum shopping and more desirous of ensuring that oversight over wiretap orders was performed by the courts with the closest geographic nexus to the investigations at issue. But again, whatever you think about this question of what would happen when the order is silent, we have orders here that the government no longer defends, that the government recognizes exceeded the district court's power to enter. I would say just a couple of things about the government's argument on the issue of the law. Ginsburg. At that point, Mr. Shanmugam, there was a legitimate dispute whether the mobile phone itself qualified as whatever the intercept device. There was a the government took the wrong position on that, now admits that it was the wrong position, but the courts were confused whether the mobile phone itself constituted the interception device. Shanmugam. That's right, Justice Ginsburg, but the government does not argue before this Court for a good-faith exception. In footnote 6, the government concedes that that argument was waived below, and that would be the appropriate place to locate any such concern. And so what we're left with is the government really, again, primarily relying on two arguments, the argument about the meaning of insufficiency and its severance argument. And on the issue of insufficiency, as I indicated in my opening argument, that would really lead to absurd results. And I think the most telling moment in Mr. Tripp's argument was when he was asked about our hypothetical of an order that authorized a 180-day wiretap, and in response to that, tellingly, he didn't attempt to make the argument that that would not fall within the scope of the phrase insufficient. He turned it to the government's severance argument instead. And I think that that hypothetical and the Chief Justice's hypothetical of an order authorized by Mr. Tripp itself really illustrates that narrowing insufficiency to exclude overbreath would really lead to absurd results. Alitoson Our legal system usually does not give a party relief based on a mistake that had absolutely no effect on the party. Now, I understand that the provision that's directly at issue here is an exception to that. It is a list. It's some kind of a – there's some requirements that have to be in the warrant, and whether or not they had any effect whatsoever, the statute says that there has to be suppression. But when you have that kind of a rule that is purely a formal rule, would you not expect to find in the statute a very clear specification of the things that have to be in the warrant, a very clear checklist so that somebody can be certain that all of those steps are covered, even if they have no effect? Shanmugam Justice Alito, that might be – may I answer, Mr. Chief Justice? Shanmugam Sure. Shanmugam That might be a better way to write the statute. Congress plainly didn't do that because it scattered those requirements across several subsections. But I think that your question reflects this concern about the harshness of the rule, the extremeness of the rule. And on that, I think that we can be certain that what Congress intended to do, as this Court said in Giordano, was to ensure strict compliance with the statute's requirements, and it created a muscular suppression remedy in order to effectuate that goal. And we would ask for reversal of the judgments below. Thank you. Roberts. Thank you, counsel. The case is submitted.